UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECIL CARR aka Lonnie Johnson,<br><br>Petitioner,<br>v.<br><br>TOM CAREY, Warden, et al.,<br><br>Respondent. | CASE NUMBER:<br><br>CV 00-05782-CAS(RZ)<br><br>NOTICE OF FILING OF<br>MAGISTRATE JUDGE'S<br>REPORT AND RECOMMENDATION |

TO:   All Parties of Record

Priority ✗
Send ✗
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

    You are hereby notified that pursuant to the Local Rules Governing Duties of Magistrate Judges, the Magistrate Judge's report and recommendation has been filed on **February 25, 2005**, copy of which is attached. Any party having objections to the report and recommendation shall, not later than **March 21, 2005**, file and serve a written statement of objections with points and authorities in support thereof before the Honorable Ralph Zarefsky, U.S. Magistrate Judge.

    Failure to so object within the time limit specified shall be deemed a consent to any proposed findings of fact. Upon receipt of objections, or upon lapse of the time for filing objections, the case will be submitted to the District Judge for disposition. Following entry of judgment and/or order, all motions or other matters in the case will be considered and determined by the District Judge.

    The report and recommendation of a Magistrate Judge is not a final appealable order. A notice of appeal pursuant to Federal Rules of Appellate Procedure 4(a)(1) should not be filed until the judgment and/or order by the District Judge has been entered.

CLERK, UNITED STATES DISTRICT COURT

Dated: February 25, 2005    By: _____
                                          Ilene Bernal, Deputy Clerk

M-51A (11/01)    NOTICE OF FILING OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

FILED
CLERK, U.S. DISTRICT COURT
FEB 25 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY
SCANNED

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CECIL CARR aka Lonnie Johnson,<br><br>  Petitioner,<br><br>vs.<br><br>TOM CAREY, Warden, et al.,<br><br>  Respondents. | CASE NO. CV 00-05782 CAS (RZ)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

Pursuant to 28 U.S.C. § 636 and General Order 01-13 of the United States District Court for the Central District of California, the undersigned submits this Report and Recommendation to the Honorable Christina A. Snyder, United States District Judge. The undersigned recommends that the Court deny the Petition and dismiss the action with prejudice.

## I.

On October 6, 1997, in Los Angeles County Superior Court, Petitioner Cecil Carr pleaded guilty to and was convicted of one count of carjacking, a violation of CAL. PENAL CODE § 215(a). (Reporter's Transcript ("RT"); Motion to Dismiss, Exh. A.) Petitioner admitted three prior convictions and was sentenced, under California's Three

Strikes law, to 25 years to life in state prison. (*Id.*) Petitioner attempted, unsuccessfully, to appeal his conviction. (*See* Motion to Dismiss, Exhs. B, C; Traverse, Exh. A.)

On October 1, 1998, Petitioner served and filed a petition for writ of habeas corpus in the Los Angeles County Superior Court which the court denied on October 15, 1998. (Motion to Dismiss, Exhs. D, E.) Petitioner then filed a petition for a writ of mandate in the California Court of Appeal on November 16, 1998, which that court denied on November 24, 1998. (Motion to Dismiss, Exhs. F, G.) On May 25, 1999, Petitioner filed a habeas corpus petition with the Court of Appeal, which that Court denied on June 8, 1999. (Motion to Dismiss, Exhs. H, I.) Petitioner filed a petition for review with the California Supreme Court, which that court treated as a petition for a writ of habeas corpus and consolidated with a later Petition filed on January 13, 2000. (*See* Motion to Dismiss, Exhs. J, K.) The California Supreme Court denied relief on March 29, 2000. (*Id.*)

On May 30, 2000, Petitioner filed the present Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. On January 24, 2001, this Court granted Respondent's motion to dismiss the Petition as untimely. On October 9, 2003, the Ninth Circuit Court of Appeals reversed the judgment and remanded the action to this Court.

On March 11, 2004, Respondent filed an answer to the Petition. Petitioner filed a traverse to the answer on May 13, 2004.

The Court assesses the Petition under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides in part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254. Under the AEDPA, a federal court shall presume that a determination of factual issues made by a state court is correct, and a petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

  The Supreme Court has explained the standard of review under the AEDPA as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court's decision is an "unreasonable application" of Supreme Court precedent if it is "objectively unreasonable" which "requires the state court decision to be more than incorrect or erroneous." *Lockyer*

-3-

*v. Andrade*, 538 U.S. 63, 75 (2003); *Ortiz-Sandoval v. Clarke*, 323 F.3d 1165, 1169-70 (9th Cir. 2003). Thus, "an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *accord Price v. Vincent*, 538 U.S. 634, 643 (2003) (even where reviewing court might find that error occurred, habeas relief is not warranted where state court denial of claim is "at least reasonable").

Under the AEDPA, circuit law may be "persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law." *Davis v. Woodford*, 333 F.3d 982, 990-91 (9th Cir. 2003). However, only the Supreme Court's holdings need be reasonably applied by the state courts under the AEDPA. *Andrade*, 538 U.S. at 71-72.

## II.

Petitioner contends that his trial attorney was ineffective in three instances. First, counsel did not subject Petitioner's prior convictions to any "adversarial testing." (Petition, at 6.) Second, counsel did not provide a complete set of Petitioner's psychological records (or did not seek to find a complete set of such records) for use in Petitioner's competency hearing which was held prior to Petitioner's guilty plea. (*Id.*) Third, counsel did not advise Petitioner of his rights to appeal his conviction. (*Id.*)

To establish a *prima facie* claim of ineffective assistance of counsel, Petitioner must demonstrate that trial counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Petitioner bears the burden of establishing both components. *Id.* Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.*, 466 U.S. at 687-88. Under *Strickland*, counsel's deficient performance prejudices a petitioner where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694.

In reviewing trial counsel's performance, the Court will strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made. *Id.*, 466 U.S. at 689. Only if counsel's acts or omissions, examined within the context of all the surrounding circumstances, were outside the "wide-range of professionally competent assistance," will Petitioner meet his initial burden. *Id.*, 466 U.S. at 690.

In the context of reviewing a guilty or no contest plea, the test for examining counsel's representation is a minor modification of the *Strickland* test. The first prong, examining the reasonableness of counsel's representation, is the same as that under *Strickland*. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). However,

> [t]he second, or prejudice, requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial.

*Id.*, 474 U.S. at 59.

Petitioner nowhere specifies with any real clarity the challenges he would have had his attorney make to the validity of the prior convictions. As best the Court can understand, these challenges would have been based not on whether Petitioner actually suffered the convictions, but on what Petitioner believes to have been breaches of those prior agreements by counting those prior convictions as "strikes." (*See e.g.* Petitioner's Memorandum of Law ("Petitioner's Memo"), at 3; Declaration of Petitioner; Traverse, at 10, 17.) Petitioner explains the claim most clearly as follows: "Had counsel investigated the priors . . . it would have been revealed that the courts adjudicating the . . . felonies had

1 accepted a plea-agreement with certain terms attached to the agreement for a specified
2 amount of additional time as enhancement, where the petitioner to be newly charged with
3 a felony [*sic*]." (Traverse, at 10.)

4 　　　　Petitioner is incorrect that his attorney could have mounted a successful challenge to the prior convictions on this basis. Petitioner concedes that even had counsel discovered the supposed substance of the prior plea agreements, Petitioner still would have admitted the truth of the prior convictions (albeit "with the understanding that they carried less weight"). (Traverse, at 17.) This would be in keeping with the general role that the fact that a defendant does not anticipate a change in law which alters the prospective effect of a felony conviction does not impugn the reliability or truth of a prior conviction and guilty plea. *United States v. Ruiz*, 536 U.S. 622, 630 (2002) (*citing Brady v. United States*, 397 U.S. 742, 757 (1970)); *People v. Powers*, 151 Cal. App. 3d 905, 912-17 (1984). If Petitioner would have admitted the truth of the prior convictions, then he cannot be heard to assert that, but for counsel's supposed ineffectiveness, Petitioner would not have pled guilty. Petitioner can demonstrate neither deficient performance nor prejudice.

　　　　Petitioner's second claim fares no better. In fact, Petitioner is precluded from complaining about his attorney's representation at the competency hearings which preceded Petitioner's admission of guilt. (*See* Answer, Exh. L.) "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Floyd*, 108 F.3d 202, 204 (9th Cir. 1997) ("An unconditional guilty plea . . . cures all antecedent constitutional defects."). A complaint about deficiencies in a pre-plea competency hearing, therefore, may not be heard on habeas review. *See Schuman v. Duckworth*, 553 F. Supp. 421, 425 (N.D. Ind. 1981) (declining to consider a claim that defendant was improperly denied a competency hearing prior to pleading guilty); *cf.*

*Harris v. Procunier*, 498 F.2d 576, 579 (9th Cir. 1974) (stating that guilty plea in adult court waives failure of state to provide counsel at juvenile fitness hearing).

Finally, Petitioner alleges that counsel was ineffective for failing to advise Petitioner of his right to appeal. (Petition, at 6.) Petitioner contends that counsel did not advise him about his appellate rights and that Petitioner did not know he had the right to appeal until he was jailed after his conviction. (Petitioner's Memo, at 6.) Petitioner does not allege that counsel misadvised him or told him that he would file an appeal on his behalf. (*See id.*)

Counsel does not have a constitutional duty, in all cases, to advise a defendant of his appellate rights. *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000). Instead, "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.*, at 480. In making this determination, a court should consider it "highly relevant" that a defendant has chosen to plead guilty and received the sentence bargained for. *Id.*

The California state courts reasonably could have determined that Petitioner did not demonstrate that counsel was required to consult with Petitioner about an appeal. First, Petitioner's counsel reasonably could have determined that a rational defendant in Petitioner's situation would not want to appeal. It is "highly relevant" that Petitioner pled guilty, admitting not only the facts underlying the carjacking conviction but also the truth of his prior convictions, and that Petitioner received the sentence agreed upon in the plea arrangement. It is also relevant that the prosecutor dropped four additional felony charges (each presumably carrying additional 25 year-to-life sentences) against Petitioner in return for his guilty plea. Moreover, Petitioner has not suggested nonfrivolous grounds for appeal of his conviction by guilty plea.

Second, based on Petitioner's allegations and the trial record, Petitioner did not "reasonably demonstrate" to his attorney his desire to appeal. Nowhere has Petitioner

-7-

suggested that he informed his attorney he wanted to appeal. To the contrary, Petitioner states that he did not even know he had a right to appeal until well after his conviction and sentencing. (*See* Petitioner's Memo, at 6.) The only indication counsel might have had that Petitioner wanted to appeal was Petitioner's question to the judge during the plea proceedings as to whether Petitioner would be able to "get [the sentence] modified later." (*See* RT 3.) Although this could be seen as an indication that Petitioner wished to appeal, it is indistinct enough that the California courts reasonably could have determined it was insufficient to reasonably demonstrate to counsel Petitioner's desire to appeal. (That Petitioner attempted to appeal on his own does not affect this analysis because Petitioner made this attempt after his conviction and there is nothing to suggest counsel was aware of Petitioner's attempted appeal). Because the state courts reasonably could have applied *Flores-Ortega* to determine that Petitioner has not demonstrated deficient performance by his attorney, habeas relief is not warranted on this claim. 28 U.S.C. § 2254(d); *Price*, 528 U.S. at 643.

### III.

Petitioner contends that the application of California's Three Strikes law to his case violated the prohibition on ex post facto laws. (Petition, at 6.) The California Court of Appeal denied this claim, ruling: "It is well established that increased penalties for subsequent offenses are attributable to the defendant's status as a repeat offender and arise as an incident of the subsequent offense rather than constituting a penalty for the prior offense." (Motion to Dismiss, Exh. I.)

"[T]he ex post facto prohibition . . . forbids the imposition of punishment more severe that the punishment assigned by law when the act to be punished occurred." *Weaver v. Graham*, 450 U.S. 24, 30 (1981); U.S. CONST. ART. I, § 10, cl. 1. California's "Three Strikes" law is a recidivist statute which does not alter the punishment for convictions prior to its enactment in 1994, but simply imposes a more serious penalty for current offenses based on a finding that a defendant is a recidivist. CAL. PENAL CODE

§ 667(b). "The Supreme Court and [the Ninth Circuit] uniformly have held that recidivist statutes do not violate the Ex Post Facto Clause if they are on the books at the time the [present] offense was committed." *United States v. Kaluna*, 192 F.3d 1188, 1199 (9th Cir. 1999) (citations omitted); *see also Parke v. Raley*, 506 U.S. 20, 27 (1992) ("And we have repeatedly upheld recidivism statutes against contentions that they violate constitutional strictures dealing with . . . ex post facto laws.") (citations omitted).

California's "Three Strikes" law became effective March 7, 1994, *People v. Samayoa*, 15 Cal. 4th 795, 861 (1997), and Petitioner committed the offense for which he is presently committed in 1995, after that date. Whether he committed his strike priors before or after 1994 is irrelevant to this analysis. The state courts reasonably denied this claim. 28 U.S.C. § 2254(d).

### IV.

Petitioner's third claim is not a separate claim. He argues that a petition for writ of habeas corpus is a proper vehicle for him to challenge his conviction and that this Court should hold an evidentiary hearing. (Petition, at 7.) Petitioner's habeas petition is appropriately brought, but Petitioner has demonstrated neither the necessity for, nor his entitlement to, such a hearing.

### V.

Finally, Petitioner argues that he was denied a fair trial. (Petition, at 7.) However, the bases on which he believes his due process rights were violated are the same ineffective assistance of counsel claims outlined in claim number one above. As indicated by the analysis with respect to that claim, this present claim does not merit relief.

///
///
///
///

## VI.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the District Court issue an Order: (1) accepting and adopting this Report and Recommendation; and (2) directing that judgment be entered denying the Petition and dismissing the action with prejudice.

DATED: February 23, 2005

*/s/ Ralph Zarefsky*
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE